Good morning, Your Honors. May it please the Court. Your Honors, today I'd like to talk about the connecting thread or underlying flaw that winds its way through the two decisions that the United States is appealing here. And that is that the trial court overstepped its role and usurped the discretion of the government. First, in regards to the Small Business Administration and the discretion it has to find a small business to be not responsible under the Small Business Act. And secondly, with the contracting officer, second-guessing the contracting officer's discretionary decisions that has the discretion under both this Court's precedent and the Federal Acquisition Regulation. Well, let me ask you about that, and that's the whole investigation kind of issue. Don't you appreciate the Court of Federal Claims kind of frustration or feeling he wasn't getting the straight story into RM? Can I say that? Yes. The whole history, one, this person's participation in the second solicitation at all, because the government either said they didn't know or said they didn't think so, I don't remember. And then getting the letter which indicated that not only he had some role, but essentially a leadership role. So without saying whether that violated the law or what it was, you can appreciate, can you not, the frustration and the fact that this was not forth, the government wasn't forthcoming, even if it wasn't an intentional not forthcoming. And it was problematic. It raised questions. So what do you have to say about that? Well, Your Honor, I think that there's a couple answers to this, and I'm going to try to weave it all together here. But what was puzzling about the conflict of interest in Procurement Integrity Act decision is that the court found no OCI, found no PIA violation. But even in the absence of that finding, and I don't know the answer to this, in the absence of that finding when they were at GAO and these concerns were raised, either the government voluntarily or whatever in lieu of something else happening agreed, we're going to do a clean evaluation, second evaluation, right? Well, I mean, and this is where the court says it's not going to get into semantics, but then does and talks about what is a new evaluation. And to be frank with you, I'm not aware of any decision that talks about what's a new evaluation. But isn't it true that what's part of what led to this new evaluation were at least some of the allegations, founded or unfounded, that had gone into this particular individual's relationship with the prior existing contractor? And so a re-evaluation, could one not fairly assume that the re-evaluation was to be done outside of this person's questionable activities previously? Well, to be very clear about when we're talking about questionable activities, you know, R.M. was not removed because of questionable activities. He was cleared. He was removed because of his performance. I'll be frank about that. And inconsistencies in the actual evaluations, things not making it up to a consensus. If your honors look at appendix pages 2911 and 3440, those are two different pages, your honor, but they say the same thing. This is the OCI evaluation and the PI evaluation by the contracting officer. And what it says is that the allegations put forth about R.M. about having F3 write three of the four task orders, that that was actually normal behavior because the task orders for Raptor 4 were based on task orders from Raptor 3. Right, but then doesn't it turn out that some of his earlier work, R.M.'s earlier work, evaluating past performance, then ends up becoming part of the evaluation that he oversees when he's chair? And that taint, for lack of a better word, is still there even under the so-called re-evaluation, isn't it? What's the taint, though, your honor? He's been cleared of an OCI and a PIA. The court, this court, in its axiom decision, questioned whether it would ever be appropriate for the court, the trial court, to question the trustworthiness of a government official in this situation. But isn't that the kind of bad feeling compounded by the fact that the court was interested and the government was not forthcoming into whether or not this person had a role at all. And then they had to pull teeth to get the termination letter, which also demonstrates the role he had had. I mean, there's a little bit of a taint here. And I'm going to circle back to your original question about understanding the court's frustration. Yes, I understand the court's frustration, but it's arbitrary and capricious review. OCI investigations and conflict of interest investigations, the government is entitled to substantial discretion. That's the precedent of this court. What, in your view, the government committed, did they not, to do a re-evaluation? Correct. In your view, what are the parameters? I mean, to what extent, if they didn't do it at all, maybe that would be a problem. Oh, yes. But what kind of boundaries are they within, given this commitment? So what Mr. Wright did in the new evaluation was go through and check everything, basically double check, to make sure that the information that was provided by the evaluators flowed up to the consensus. Based upon that, technical things were changed. But if your honors look at the record, and we point this out in our brief, past performance ratings changed, prices changed, the results changed. Now, the trial court expressed an opinion that a new evaluation, when you use the word new evaluation, you have to start from scratch. That didn't appear in any case that I'm aware of before Oak Grove, yet we were sanctioned for that, for representing to the GAO of a new evaluation. Weren't you sanctioned for, you're talking about the Rule 11 sanctions? That was for you to disclose documents as part of the administrative record from the get-go. That's what the Rule 11 sanctions were based on, right? Yes, and the court was upset about that, saying the document was necessary because the court felt a new evaluation didn't occur. So I don't think, I think that was a little off there, saying that you were sanctioned because of the new evaluation language. That was some of the analysis for finding that something was potentially relevant, right? Right. But if we're talking about whether there's a legal basis to have sanctions, that factors into whether or not there was a legal basis. Let's talk about, go ahead. I had some threshold questions that I forgot to do, and that was just basically, what's the status, I mean, this injunction was in effect, so the government proceeded, my understanding is, to kind of do a new solicitation. And this has been going on for a long time. I mean, this case has been pending at least from the filing of the briefs or whatever, another year, extensions of time, largely because the government requested extensions of time. What's the current status of this re-solicitation? The current status is that there was another protest as the government is attempting to comply with the... What is this, the protest over what? Has the bid been awarded or just... No, pre-award, Your Honor. Pre-award. Pre-award, yes. The government is attempting to comply with the court's injunction here. Now, I'm just going to circle back for a second and say, I was going to say one of that common thread that's going through this is that we think, even if we were wrong on each of the merit issue, the trial court was required to remand, to let the government in the first instance exercise its discretion on the OCI, the discussions, and... Okay, take me back to what... So what's happening, why does that matter and why am I raising that? Because what has happened is the Army is trying to, at this point, go by what the injunction was, which is one of two things, start over or conduct discussions. And what the Army did do was conduct discussions by setting a competitive range for the most highly rated offers. That was protested by Oak Grove. And my understanding is that the Army is then now taking corrective action in that protest because based on the Oak Grove decision that's on appeal today, setting a competitive range is not part of the injunction. It says do discussions with all offers. So what the Army... But just my basic understanding, you're way ahead of me. A new solicitation was issued and bidders came in and now... I'm sure that I will be corrected if I'm wrong in this, but I don't believe it was a new solicitation. It's just going to go back to do discussions on the previous proposal. And you were trying to explain who they had discussions with? Correct. Could you re-explain that? I'm sorry, I didn't follow. So discussions were to be held with a competitive range of the most highly evaluated proposals. Okay. And then that was protested by Oak Grove. I'm sure my colleague on the other side will correct me because I have not read the complaint in that case. And corrective action was then taken by the Army in that matter in order to comply with the injunction in this Oak Grove that says discussions have to happen with all offers. So at this point discussions have been had with who? I'm not sure discussions have started yet, but it looks like discussions are going to be held with all offers unless this Court reverses. All 10 then, correct? That's my understanding. And what's going on in the interim? Is F3 continuing to do the work under... I mean, who's doing the work or is it not? It's decentralized. And my understanding is that they're getting the work from all different vehicles except for one piece of work, rehearsals, which is just not getting done at this point. Okay. Now in terms of what the impact is in the real world on the ground in terms of what we do, if we confirm, then you just continue what you're doing with this resolicitation. If we reverse, then what? Does F3, I guess it depends on the basis for a reversal. Is there potential for F3 to just get awarded the contract based on the earlier solicitation? Is that the relief that's being sought? That's possible. It depends on what your honors hold. Recently in CACI, and that's 67 F4 1145, this Court talked about if there are discretionary decisions that are left over following a court decision that this court should remand. The trial court should remand. Back to the agency to let those happen. So if your honors gave us a blank slate. So even if we reverse, do you think we should remand anyway? I mean, there's still stuff open that a complete reversal is not. Well, if your honors agree with us on the interpretation of the DFARS, the discretion of the contracting officer for OCIs, on the interpretation of the solicitation for the teaming agreement, and that the SBA should have been doing a non-responsibility determination for LUCOS, that's a clean slate victory for us. I think that's a reversal in judgment to the United States. Were there some additional issues that they raised that the trial court did not reach, given the findings that it made against you? For instance, failing to submit signed SF30s, mis-evaluating F3EA's past performance. Are there not some things that would have to be remanded anyway? I mean, I think that at that point, if the trial court in this very comprehensive decision, I mean, this is two lengthy decisions here pointing out many, many things that the trial court felt that the government did wrong here. If the trial court thought those were problematic, there would have been a decision on those as well. I don't get that. We can't make that assumption. No, but this is exactly what I'm talking about, right? If there's something left over, it should be remanded. Okay, that's what you're saying. But what I'm saying is, even if your honors disagree with us, let's say you disagree with us that the responsibility of glucose is actually an issue and it needs to be looked at. What the trial court did here was reach that decision in the first instance. What it should have done is remanded to the contracting officer with instructions to set it on the Certificate of Competencies path with the SBA. Let the SBA fulfill its statutory duty. I mean, this isn't the statute. And what does a witness do? I guess I'm interested in a remand because the amount of time that's passed on this is ridiculous. Yes. So if it gets to be a remand, then you continue with whatever you're doing now in terms of implementing the injunction. I mean, this could go on for another five years. We get remands and appeals of remands and so forth, right? I mean, if your honor orders a remand, I'm not sure what will be left over for Oak Grove to legitimately, genuinely appeal, or excuse me, challenge. Oh, I was just going to ask you with regard to the administrative record. Yes. And what I was specifically wondering is I looked at the Court of Federal Claims rules on how the content and filing of the administrative record, and it talks about how certain core documents are supposed to be provided from the get-go. And one of those categories is pre-award audits, if any, and surveys of the offers. And I wanted to know your view on whether, to me, the DCMA would fall in that. And so I was wondering what your view was. Yes, your honor. So I'm scrambling to find Appendix C, paragraph 22 right here. I don't seem to have it directly in front of me, but if I remember correctly, the word is may, right? So it doesn't say that these documents definitely 100% need to be in. Now, that's not my answer to your question. It says early production of relevant core documents may expedite final resolution of the case. The core documents may include. So your view is that, oh, it might not be a core document. And now I'm going to tell you why. Right. So, you know, the responsibility of glucose is an issue that Oak Grove wants to discuss. But as we demonstrate in our... I'm sorry, could you repeat that? Yes, the responsibility of glucose is an issue that Oak Grove wants to discuss. It wants it evaluated, right? It wants glucose to be found... But the government is the one that brought up glucose for its standing argument. Absolutely. We lost that standing argument on page, like, 13. No, but I'm just saying, you're the ones who raised this, raised glucose, and then didn't produce the documents until after oral argument had occurred and after the... It was late, right? Right, because there was never any responsibility determination of glucose. But this says pre-award audits, if any, or surveys. My question to you is, is the DCMA a survey? That's my question. Does it fall within the broad... I understand your may argument. Yeah. But my question is whether it falls under Category P, pre-award audits, if any, or surveys of the authors. Well, Your Honor, the reason why I think it doesn't fall under that is because the decision that the administrative record was assembled to represent was a decision to award to F3. And that DCMA document didn't factor in to... When did you raise your standing argument? I'm sorry, could you say that again? When was the standing issue raised by the government? Yeah, yeah. Well, I mean, and that's the point, that the argument, the document is relevant to a defensive argument by the government that at that time was jurisdictional and is no longer jurisdictional, that kind of standing, Your Honors. But why didn't you put it in the record once you put Lucas at issue? You know what, Your Honor, I think we've learned our lesson on that, and we'll be putting them forth in the future on that. Is it related to... Is it your contention that the failure to put the document in the record was inadvertent, or was it an intentional decision? It seems like it was inadvertent to me, Your Honor. Now, I wasn't on this case in the ground floor. I've read everything. I've read everything that the trial court has read. And it seems to be this underlying... Because I thought that the government's submissions to the court below were that it was intentional with the understanding that this was not relevant because of the SBA would be the one... Right. Yeah, I guess this is a little bit of semantics, Your Honor. It was intentional. We don't think that's relevant. But then the court told us it was relevant. So we're like, ooh, sorry. So it wasn't unintentional. Yeah, it was more of accidental. It was an intentional decision, and I don't think this is a potentially relevant document. Yeah, yeah. See, and this is kind of the problem, like, just in general about the sanctions decision. Our agencies are putting forth these gigantic administrative records that no longer exist in what we used to call the contract file, right? A filing cabinet that had all the documents in it, and they would pull it out, they would photocopy it, they would send it to the Department of Justice, and we'd get these binders. And that was what the administrative record would be. Nowadays, things are decentralized in computers and everywhere, and our contracting officers are making discretionary decisions about what they think belongs. What do you think happens in private practice outside of the government? I was in private practice, Your Honor. Well, I mean, the same problem occurs. It's a client, and the issue is communication with the client to make sure that they know what has to be produced. The lawyer has to do that. Has to communicate with the client, right? Yes. This is not an issue unique to the government, right? No. Well, I mean, it's unique in the sense of producing an administrative record, right? I mean, is this parallel to discovery for private clients? I think so. I mean, there's a rule that says this is what you're supposed to include. Right. And, you know, the same thing with responding to discovery requests or providing initial documents, required discovery. And, you know, Your Honor, on the practical side here, I'm a member of the bid protest team in our office, and I'm part of the assigning process when a protest comes in the door. And the outreach we have to the agencies, and that includes referencing Appendix C, Paragraph 22 of the Court of Federal Claims Rule, saying these are the types of documents. We do reference that to every single agency that has protested. But when it comes down to it, there's still an element of a judgment call. When they click through their files and say, does this document belong, does this one not belong? And everything would have been a lot easier in this case if when the individual that the Army was going through saw this document included in the first instance. I think we could all agree that things would have gone smoother if this document had been included in the administrative record. But a discretionary decision was made, and the court disagreed with it because it wanted to find non-responsible in the first instance, which is SBIR. You're suggesting that the court had some sort of agenda. They wanted a document because it was relevant, and they thought it was relevant. But they thought it was relevant. Let me clarify what I'm saying. They thought it was relevant to an issue they never should have reached. Except that you put it, the government was the one that raised this issue. For purposes of standing, which the court, to be very clear, the finding of non-responsibility for glucose was in the merits portion of the decision, not page 13 of the standing part, because standing is based on TINTIN, which basically says if you can upset everything, and everything has to start over, then there's standing. I understand your point about discretion, but I hope you recognize that we also owe discretion to the court below in reviewing the Rule 11 sanctions. Oh, absolutely. It's supposed to look at, it's only reviewed for an abuse of discretion. So that's why our primary argument on that DCMA document is that if there's an abuse of discretion because the basic legal premise was wrong, and our position is that the basic legal premise was that the court can, in the first instance, make a responsibility determination of glucose, that's why the document was relevant to the court, and that's where the error is. What the court should have done is remanded. It sounds like your view of relevance here is not what the right standard is. The question is potential relevance, right? Is the document potential relevance? Also, you're saying, okay, once he saw the document, he should have remanded it. Well, if he hadn't seen the document, he wouldn't have had a basis to remand. I disagree with you, because in the record itself, as it existed before the document, there was the statement that glucose was financially not responsible. But this document added to that. So it's relevant. It adds to it. But the decision could be made without it. Well, you say the decision could be made, but some judges try to be thorough and want to have a firm basis. It's clearly relevant, even if you say he could have done it anyway, but this gave him a more solid basis for doing it. How can that not be relevant? Well, again, Your Honor, I'm not trying to say it's not relevant. I'm saying it's relevant to an issue we think the court never should have reached. Can I just ask you whether or not the agency made a responsibility determination of glucose? There's a statement by counsel below at A967 where Mr. Pixley tells the court, I think the agency did make the responsibility determination and made the conclusion that all offers were responsible. I understand your position to be glucose's financial responsibility never was evaluated. So what's the reality? I think that statement's incorrect, Your Honor. Looking through the record, I have not seen a responsibility determination of the other nine offers, and the reason why is that FAR says do it for the prospective awardee. So this is just a misstatement by counsel. It is a mistake. Thank you. Thank you, Your Honor. Thank you. We've exceeded our time, but we're not going to keep you out of your time. That's much appreciated. Thank you. May it please the courts, my name's Josh Mullen. I'm counsel for intervener in appellant F3A. F3A is the service-disabled veteran-owned small business that incorrectly lost the contract. That's the subject of this appeal. My intent today is to just quickly supplement just three points to the government's argument. First and foremost, beyond just the solicitation language, we argued in our brief that the solicitation made clear that the government did not intend to conduct discussions in this case. However, beyond the solicitation language, it also made clear the final rule implementing DFARS 215-1 makes clear that in order to have the DFARS policy that Oak Grove's relying on to require discussions in this case, in order for that DFARS policy to be implemented, you must insert Alternate 1 into the RFP. This RFP did not insert Alternate 1. And I'll expressly quote what the final rule states. It says, use of the clause without Alternate 1 will not accomplish the stated objectives. Only the clause with its Alternate 1 will accomplish the purpose of the case. Therefore, under blue and gold, your honors, since this solicitation made clear that Alternate 1 was excluded, Oak Grove then knew that the DFARS discussions policy was not going to be followed. Are you here to address the teaming agreement issue as well? I am. Yes, your honor. First of all, is there evidence, did you have an oral agreement as opposed to a written agreement with one of these subcontractors? What the record shows, your honor, is that the agency did not evaluate any teaming agreements for any offeror. And the purpose was because it just was not a material requirement of the RFP. Did you get credit for having some kind of relationship with one of these other companies as part of the evaluation that led to you getting the award? What the RFP stated is for, to get credit under the evaluation criteria, because there was no evaluation criteria addressing teaming agreements. The only way to get credit for, under Section M criteria, was to describe your relationship with subcontractors or to identify them. There was no language in the evaluation criteria that... Was your answer to Judge Stark's question yes or no? I would say that to the extent that any credit for the subcontractor was there, it was there because F3A did describe its subcontract relationship. So you did get credit? Yes. You described and identified and got credit. That's right. But your contention is you don't need to submit the agreements in order for that credit to resolve? Yes, your honor. Did you answer Judge Stark's first question about whether it was oral or written? I don't think I heard an answer. The record doesn't show whether it was oral or written, your honor. And plain and simply, the agency did not evaluate any teaming agreement submissions. The record doesn't show that at all. And the reason being is you only had to identify and describe per the Section M evaluation criteria. And then significantly, this... I do want to address one thing, too. Oak Grove has not shown prejudice. First, we believe, as we've stated on our brief, that this is not a material requirement. The RFP made clear you're not locked into teaming agreements. What, by the way, is our standard of review on that materiality question? The Court of Federal Claims said it is material. On what basis do we... What's our legal standard to say that it's not material? I believe it would be de novo based on the terms of the solicitation. It's what the solicitation reads, so it's a pure legal question. And, your honor, I do want to address prejudice. The issue of prejudice, Oak Grove has never addressed. Under case law, government contracts case law, to the extent a material requirement is relaxed, and we're arguing it's not material, but to the extent a solicitation requirement is relaxed, a protester is supposed to show, well, I would have submitted a different proposal if I knew about that alleged relaxation. Oak Grove's never argued that. They've never argued that. So they have not shown prejudice in relation to this alleged relaxation of a material requirement, which we dispute is material in the first instance. May it please the Court. Good morning. We're here today, my colleague Tom Pettit and I, on behalf of Oak Grove Technologies. We also are a service-disabled veteran-owned small business, as is every company in this competition. I want to start just very quickly with Judge Prost. You were asking about what the status of this procurement is, because we pointed out a mootness issue from our perspective in our brief. I'm hesitant to take too much time on that. Well, I don't want you to get into the good or the bad or what's going on in the current protests. I was just wanting to get a sense of the timing of this and what was going on on the ground. I do want to touch one issue, though, Judge, because I think it's very relevant for you. I'm sorry. The outcome of that other case down at the Court of Federal Claims was the same solicitation. So during this lengthy time, this same solicitation, they reopened the competition. They've conducted discussions. They've done more evaluations. They then excluded Oak Grove again from the competition. We then protested that. We filed a notice of related case with this group. Did Oak Grove have discussions? Yes, Your Honor. Actually, you can see on that. We actually attached to the back of our brief the discussions that were issued to Oak Grove. But in that other action where we were excluded, we filed another action that went to Judge Solomson. And in that other action— I really don't feel like it's—we've got enough to do with our record. I understand, Your Honor. And we're not going to assess or evaluate this. So I just wanted to know what was going on. That's sufficient for us. Thank you. Okay, Your Honor. Let me then dive into some of the things that the Court asked about. And I'm going to do it in a little bit of reverse order and start with where you all were asking Mr. Grimaldi some questions. Judge Stahl, you asked Mr. Grimaldi, was the DCMA document a pre-award survey? Putting it into rule at the Court of Federal Claims that it should have been in the record. The first page of the DCMA document says at AR 3937 that it is, quote, a pre-award survey. It clearly belonged in the record. But let me take a step back. I'm not going to take too much time on this. But let me take a step back and help this Court understand why Lukos Vatsy came to be relevant in this procurement. When we initially filed our protest at the Government Accountability Office, the government said there was an intervening offeror, Lukos Vatsy, who took away our standing. No, we understand. I think you can tell from our questions. Why don't you talk to us a little bit about this investigation thing. And there was nothing in the government's commitment to do a re-evaluation. There were no parameters set. There was no, like, you have to involve all new people. Every single document has to be re-evaluated by someone other than RM. None of that was – the government didn't commit to that. And so none of that is enforceable. So even though some of the stuff that went down in the investigation, including the nondisclosure of certain documents that may very well be relevant, how do you get to the point where there's sufficient basis for overturning what went down based on that? I'm sorry, Judge. I didn't hear the question. How do you get to the point where you say the court of federal claims said, no, this is not acceptable, and it's part of the reason or at least sufficient reason to do a do-over? Sure. So I think there's two issues with respect to the investigation that are important. One, with respect to what the government committed to. What is a re-evaluation? Specifically, the government committed in the first GAO protest that we filed to do a re-evaluation. They never did a re-evaluation. What is a re-evaluation? That was something Mr. Grimaldi called semantics. It's not semantics. This court can read the United States Supreme Court – and I'm sorry, I don't have the citation off the top of my head – in its recent 2020 Regents of California decision, where the court sets forth that there are two steps. When a government takes back an Administrative Procedure Act case that it can take. One, it can consider the whole matter afresh. That's the Supreme Court's decision. Two, if it's not going to do that, then everything it does is just supporting its earlier decision in a whole different standard of review applies to how it has to be reviewed. It's all now post hoc decision making. What the government committed to do sensibly under the Supreme Court standard in Regents is to follow the path of we're going to do a re-evaluation. And the re-evaluation considers the matter afresh. They never did that. What record basis do you have that that's what the government committed to do? What's the words, Judge? Well, they said the word re-evaluation. Well, they just said re-evaluation can mean two things. Oh, no, no, no. I said the Supreme Court in Regents says in an Administrative Procedure Act case when the matter goes back to the government, when it goes back to the government, it has to take one of two paths. This is the Supreme Court. It can either be considered afresh, like wholly redone, or if it follows a different path, then it is not considering the matter afresh, and everything that the government does in that circumstance is now post hoc decision making. Did the trial court here see this as a Regents re-evaluation that was committed to by the government? I didn't see that in its opinion. Well, I think the re-evaluation that the judge is pointing to, actually the re-evaluation promise occurred at GAO, where the agency said in response to Oak Grove's GAO protest. Right, but does the trial court, in reasoning why it finds the investigation here to be inadequate, does it say the government committed, consistent with Regents, to do a full-scale re-evaluation? I don't know that they cited Regents. I was trying to react to the semantics. But they also didn't cite Regents. Yeah, I'm trying to react to the comment. I don't recall the Court of Federal Claims. Clearly, he had a problem with the re-evaluation. Of course. That seems to be a large part predicated on the RM involvement. He didn't say what you are saying Regents required, and therefore they violated. I'm sorry, Judge. I don't want to take us off track. I was just trying to say what re-evaluation means. I don't think re-evaluation is a dubious concept. Okay, but Judge Starr's question, I think, was you're going afield from the basis upon which the court... Yes. I think what Judge Solemson says about this issue is, Judge Solemson says the agency committed to do the re-evaluation. Simultaneously, there are issues about RM in the procurement, RM who was the chair. We didn't know this, but he was the chair of the Source Selection Evaluation Board. And Judge Solemson makes the finding correctly that the government never did a re-evaluation. But what does that have to do with the adequacy of the investigation? I don't see any link in the trial court opinion between I'm disappointed with the re-evaluation, and therefore more investigation needed to have been done about RM. I agree with you, Judge, in the sense that there are two different issues. The judge found that the evaluation was never done. They had never committed to the evaluation in the sense that the agency had never performed the evaluation that it committed to, and where it was tied in with RM. What do you think the judge gave? Because I have to say, I thought the relief given was more along, or the reason given, the primary reason, was that certain people, I'll call them the whistleblowers, should have been interviewed and talked to, and that RM, I'm sorry, should have been spoken to, interviewed, more than just being able to submit a declaration. I thought those were the reasons provided. And all this other thing that we're talking about was to buttress those reasons. I agree with you, Judge. I agree with you. So, I mean, Judge Solemson, when he looks at the investigation, sensibly says there are allegations received by a whistleblower about, including, I think the suggestion was that he was cleared somehow in this, but some of the allegations are that RM was communicating with F3A. We are very familiar with the facts. I understand that. But I just want to ask you this. One thing I'm not quite sure about is what standard of review did Judge Solomon owe the agency in looking at the adequacy of the investigation? Specifically, who they should have talked to and how they should have conducted the interview of RM? I think he clearly applied the arbitrary and capricious standard of review set forth at the front of his decision, Your Honor. And I think he actually goes to pains in distinguishing other cases, in dealing with investigations, and to reach the conclusion that on the facts in front of the agency in the court, where you have a whistleblower alleging that there is an improper coordination, oral, between a company and a high-level government official, that it is insufficient for the government to do its investigation without interviewing RM, all it got was a written statement, without speaking to anybody at F3A, and without speaking to the whistleblowers. How can you do... He actually said that the trial court should be very deferential to the agency in how it conducts an investigation of a conflict of interest. And haven't we further said that they're supposed to presume that government agents are acting in good faith, and that presumption has to be rebutted? Haven't we said both of those things? I think both of those are true, and I think Judge Summerson actually recognizes them in his decision. Show me where he recognizes those in his decision, in the context of the investigation. Yeah, I think he does specifically when he goes... I'm sorry, maybe Mr. Petty can pull it off for me with his sight, but he goes through actually the decisions that involve discretion, and says specifically why this case is different. And I think at the end of the day, Judge, if I were to accept what the standard of the government is, then the government can never do an investigation wrong. But at the end of the day, there has to be some sort of line and some sort of reason about this, and in this case... I'm sorry, are you asking this court to draw a line that says you have to always interview the whistleblower? No, of course not, Judge. But likewise, you can't draw a line that says you never have to. Right? Because you're drawing the reverse line, saying that you never have to, and Judge Solomson did exactly what this court wants. He applied the APA standard review. He looked at what the facts of this case were, what was in front of the court, what the allegations were, including the fact that RM was, and Mr. Grimaldi says cleared, but let's be clear. The page 845 is the page that you were referencing, I think. Yes. Well, I don't know if you've got a copy of the decision. Did you say 45, Your Honor? 845, I believe. It's not that exact page. It's thereabouts. Yeah. He says, Your Honor, notes on appendix 45, he starts saying this case is far more concerning than other cases where the courts declined to find any impropriety. He then goes through and distinguishes. But that's not addressing Judge Stokes' question. He clearly distinguishes other cases, and some are more concerning than others, but I just don't see where he's saying that. He says we start out being deferential to agencies conducting their own investigations, and further we presume that they're all acting in good faith. It can be rebutted, of course, but I'm just not seeing where he applies those legal standards. Okay. From my reading, Judge, I think that's my understanding of what he's doing. I'm sorry if that's not sufficient, but that's my understanding of what he's doing. You see it in his distinguishing other cases, I guess. I do, Your Honor, and I think he was trying to be faithful to that standard, but I think it's important to say at the end of the day that the standard cannot be the reverse where neither a trial court judge or this court can say an investigation is so bad that it's arbitrary and capricious. Of course the court's got to be able to say that. Remember, from my perspective, what we have in its worst-case scenario here, and I'm not saying because we don't know, nobody spoke to these people, is improper collaboration, who knows for what reason, between the government and a contractor on a $245 million contract. This has to, reasonable questions have to be asked when the whistleblowers come forward, and that's what the judge was saying, is look, he described, I think he described the government's reaction to this as ostrich lake, if I recall correctly, right? You don't ask, you don't talk to the, anybody who's, the people who've been identified who are part of this conspiracy, neither of them has talked to you. The whistleblowers aren't talked to. How is this an investigation? It's not an investigation at all. And at the end of the day, judge, there has to be some ability for a court to say that. Otherwise these investigations that the FAR calls out, the FAR requires, are meaningless exercises, right? They can't be reviewed, they can't be questioned, they're meaningless exercises. Can I come back to glucose? Yes. Even after the government put glucose at issue in the standing context, it doesn't seem to me that you at any point questioned glucose's financial responsibility, even though you had some evidence early on about glucose's apparent financial responsibility. Am I misreading the record? I think so, your honor. Tell me when you, as opposed to the judge, questioned the financial responsibility of glucose. Sure. So all the way back to GAO, we were attempting to get the information about glucose and to attack glucose because the government was making standing arguments against us. So we were doing that. Our initial court of federal claims case has a count related to glucose. How about the purported lack of financial responsibility of glucose? When does OGT put that at issue, if ever? So in the amended complaint, judge, we put additional information about glucose. That's at issue. But we still don't have the DCMA document at that point. So the DCMA document is actually coming. Is the first time you raised the financial responsibility of glucose in your amended complaint? Is that where you would have me find it? Well, we have challenges against glucose in our original complaint. Let me just be clear. You have broader challenges to glucose. Maybe you meant to encompass financial responsibility, but one of the arguments the appellants are making is you never put in dispute the financial responsibility of glucose. The judge did that. And your response to that seems to be, by the time of our amended complaint, we put a challenge out there to financial responsibility. We put all kinds of challenges. Is what I said correct? Yeah. We put all kinds of challenges about glucose fat C4 in the case below. I have to be careful because there's a lot of redactions in this record. But there were other pieces besides this not financially responsible about glucose. I got that. I just want to know when you put financial responsibility. Yes. We argued it as soon as we had the DCMA materials, Judge. I mean, we were arguing that. But not before that? I don't believe that we had that specific document. That's one more question. In terms of the relief, one of the arguments I understand from the appellants is even if everything that the trial court found is correct about all these problems, that at best for you there should have been a remand to the agency to perhaps set a competitive range, but do something as opposed to this injunction preventing them from going forward with who they wanted to go forward with. Is the relief too much, even on the assumption you win on all the issues here? No, Judge. I think the relief is appropriate because basically we won on an issue. The judge found that they hadn't done an evaluation. They hadn't done a new evaluation as they committed to. The investigation was improper. The DFARS required discussions, and F3EA submitted an unacceptable proposal. There was no way under this ruling to go forward with F3EA simply because they put in an unacceptable proposal. That's not a possibility. Once the judge, based on this court's decision in Dell, decided that discussions were proper, that that was the course of action, the expected course of action, and the agency hadn't done it, that's the only path at that point because F3EA is unacceptable. What the judge does with LUCOS makes findings that to me are substantially not an intervening offer, but LUCOS is not an option from the judge's perspective, and he sends it back for DFARS 215-306 discussions with the offeror that under Dell should have taken place. I do want to say one other thing. What about the teaming agreement? Can you just cover that briefly? I don't know how you disagree with it. Sure, Judge. I'm just starting to block the materiality. The teaming agreement issue, I think, is straightforward. It's the plain language of the solicitation provisions in Section L that, one, say all of the solicitation provisions require compliance. Two, they call out, as Judge Solemson notes, the requirement for the teaming agreements to be present there, and the argument that this is not material actually is picked up by Judge Stark's questions, and Judge Solemson points out that this teaming relationship is the basis on which F3EA performs well in both the experience and past performance categories of its proposal. So, of course, it's material. The government asked for it and clearly wanted it in writing, and it clearly impacted the procurement. It's the path to which F3EA got the scores it got under both experience and past performance. What is your view on the standard of review that we apply to the court's materiality determination? I think that's a good question, Your Honor. I think I would say it's clearly erroneous because I think it's more akin to a prejudice finding. Would you say it's an application of law to fact? I mean, I'm not sure what you prejudice finding, but. Yeah, I mean, I think, Judge, if it's not material, they're arguing it's not material, so you should disregard it. It's like a prejudice finding to me, where this court has said the judge's assessment is subject to a clearly erroneous standard. But, you know, I can see, Judge Stoll, you may not agree. No, no, I just don't know. It would be nice if somebody had put it in a brief and had a case and cited it so that I could confirm that. Well, I apologize for that, Your Honor. It sounds more like this. It seems more like that. So that's why my face isn't saying anything.  I wish I had a case. Yes, I apologize for that, Judge Stoll. I will say, under whichever standard, I don't think the outcome changes, because even if you're looking at it de novo, the language is clear. The language is clear. I mean, and I'm not going to use this myself, but, I mean, the judge actually addresses, I think it's in footnote 17, the argument that Mr. Mullen just made on this issue, and the court can read it itself. Judge Solomson dismembers that argument. It makes no sense that you would have this requirement in the solicitation if an oral teaming agreement, which he wouldn't even tell us did or did not exist, by the way. But the teaming agreements, they're supposed to, if you have them, you're supposed to put them in volume four, the administrative volume, which doesn't have any evaluation criteria and doesn't factor into the evaluation of the bids. Doesn't that at least open up the possibility that actually submitting the agreements, as opposed to identifying your relationships, but actually submitting the agreements, may in fact not be material to the solicitation? I would say two things in response to that, Judge. I would, you know, having argued from the other side about contractors being excluded from competitions based on failing to put things in their administrative volume, I think it would be, I mean, the contractor community might actually like a decision that says that that's... I'm sorry, I just want to be clear. There are cases, you would say, where just like this, the solicitation is very clear that the administrative volume has no impact on the evaluation. You're saying courts are nonetheless striking contractors who don't comply with... No, no, I'm saying agencies routinely remove, and all solicitations are different, Judge, so I'm going to be very careful about that. But, you know, also agencies do remove contractors based on failures to put things in the administrative volume of their proposal that are required. And, of course, as Judge Solomson said in this case, that is the whole reason that's there, is so that agency can figure out whether or not F3A can reasonably rely on the things it's saying about its subcontractor. Is it on the team? Has it committed to do the work that F3A is indicating? Et cetera, et cetera. And Judge Solomson goes through it at length and shows how that particular subcontractor is the driver in the scoring of experience and past performance for F3A. I do want to address just very briefly, if I could, and I know I'm over Judge Stark's question previously about what happens if the court were to decide to reverse. Yeah, and can you also include Judge Stark's comments to your friend in the government about how there are remaining charges in the complaint that the judge never reached? Yes, yes. That actually is exactly what I wanted to touch on, Judge Prost. So we have complaint counts, including as related to findings that were made against Oak Grove, that haven't been addressed. The judge, we had an 11-count complaint. It sounds like a lot, but, I mean, we're actually, you know, breaking in different counts. Findings, particular findings that we were challenging, but the judge did not ever address, Judge Solomson didn't ever address whether the findings against Oak Grove, the evaluative findings against Oak Grove, were arbitrary and capricious. So this case would have to go back. It can't go to F3A, even if it made any sense to go to F3A. This procurement is from 2018, 2019, right? Even if it made sense for it to go to F3A, which it doesn't, it could not, sitting in front of this court, because there are material portions of our complaint that have never been resolved. If we were to remand solely to deal with issues that the trial court didn't reach, I'm not saying we will, but if we were to do that, the injunction should be vacated in the meantime, correct? Yeah, I mean, if you were to reverse all the other issues. That was the question. I mean, I think there should be a, you know, from my perspective, Judge, there should be some kind of our ability at least to request the stay below, because at the end of the day, that was the state of play in the protest. We had a stay, an agreed to stay on the procurement. But what I would say, Judge, is, and I know Judge Prost doesn't want me to go there, but the government already is committed to corrective action in another matter on all these issues. So, in discussions, a separate case, they put in a commitment to do corrective action. So, it's almost OBE in that sense, Judge, because... What's OBE? Sorry, overtaken by events. Thank you. That's what we were getting at. That's what, you know, the government is already in a separate action that's not subject to this appeal.  The government committed to do a re-evaluation. The government committed to do a new award decision, all in another action that nobody appealed, Judge. So, there's a whole other separate action on this procurement where all of these same things that you're being asked to look at have been committed to by the government. Whatever would be the reversal here, it wouldn't affect that other decision, because that other case is not on appeal. Nobody has brought it up. The time to appeal it is run. I know that's a complicated... You know, it's kind of a complicated position, but I'm just... I want to make the court understand that they've committed to that. Well, I'm trying not to translate what you just said to everything we've done in this case. It's a complete waste of time and irrelevant. I'm trying not to interfere. Yeah, I don't... Judge, I don't want you to feel... I don't want you to feel that way. I mean, we argued that it was... We have a case before us, and we're going to deal with the issue. Yes, I understand, Judge. That's all I wanted to make sure is that you were aware that that was the outcome of this other action. Anything else? No, thank you. Okay, thank you. Thank you. All right, I think somehow the extent of time is evened out pretty much, but we'll give a few minutes to the government. Thank you, Your Honors. I'll be quick. To start with your question, Judge Stark, and remand, I prepared this introduction, didn't get to it because of Your Honors' questions, and I just want to kind of circle back to it and talk for a moment that the most telling error here is that the court did not remand, that it issued this injunction that said start over or do a discussion. And what I would like to say is if Your Honors believe that the United States was... But what is your view? A remand on what? A remand on Lucas, sure. What about a remand on the reevaluation? A remand on what? Four things, Your Honor, all four issues. What could happen if the Army still made mistakes, what they could do that's discretionary? Lucas is the big example, right, because the SBA... Okay, I think we understand that. Discussions. On appendix page 34, the court says the error was not documenting the decision not to do discussions. What about reevaluation? What would remand look like on reevaluation? Oh, you mean on the issues not addressed? No, I'm talking about each other. And I'm getting confused. Are you talking about us remanding to the trial court or the trial court remanding to the agency? Yeah, I think we're talking past each other, Your Honor. I thought you were talking about our remand. No, no, I'm going to address that momentarily if I can, Your Honors. I'm talking about what the trial court should have done, even if we were wrong on all these issues, all of our interpretations and so forth, and that is remand to the SBA for responsibility determination of Lucas, remand to the contracting officer to either issue a notification saying discussions will not happen and this is why, just like the same judge did afterwards in the IAP decision we cite in our cases. For the teaming agreement on appendix 26, excuse me, appendix page 26, the court recognizes that there could be a waiver of material terms, remand to determine whether it is material. Let the agency in the first instance set an interpretation to say whether it's material or not and then that can be reviewed, Your Honor. And for the OCI, FAR 9.503 allows the government to waive a conflict of interest. That hasn't been addressed by the court. That entire concept was skipped over. So there are these four discretionary decisions the government can make if we're wrong on everything. So at a minimum, the trial court's decision is wrong on its relief on appendix page 52. Regarding the remand from your court, Your Honor, what happens to the, and I appreciate that my colleague on the other side clarified that the remaining issues are technical issues about the evaluation of Oak Grove. Well, if on remand they need to be addressed by the trial court, but these four issues I think need to be addressed first by the agency because whether or not discussions are going to occur impacts the evaluation results from the second evaluation of Oak Grove. Okay. We really need to have this. Thank you. Thank you, Your Honor. Thank you. Were you going to take your minute? All right. Very quickly, Your Honor. Oak Grove never challenged responsibility at the Court of Federal Claims, never. Not only did they not challenge financial responsibility, they didn't challenge glucose responsibility at all, period. They did not challenge it. Second, Your Honor, the RM SSEB issue that the court identified, that also was in the record. The glucose issue and the SSEB issue were both disclosed on February 10th, and they were never challenged. They were never protested. The court raised those issues after all briefing was done. And with that, Your Honor, we would just ask that the court does reverse and grant our appeals. Thank you. We thank all sides.